IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| R.E.I. TRANSPORT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 05-57-GPM |
| | ) |
| C.H. ROBINSON WORLDWIDE, INC., and | ) |
| CIRCUIT CITY STORES, INC., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| C.H. ROBINSON WORLDWIDE, INC., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PATRIOT LOGISTICS, INC., | ) |
| | ) |
| Third-Party Defendant. | ) |

# **MEMORANDUM AND ORDER**

**MURPHY, Chief District Judge:**

This action came before the Court on January 22, 2007, for a hearing on a motion for judgment on the pleadings filed by C.H. Robinson Worldwide, Inc. ("CHR") (Doc. 96), a motion for summary judgment filed by CHR (Doc. 109), a motion for partial summary judgment on breach of contract and conversion claims filed by R.E.I. Transport, Inc. ("REI") (Doc. 110), and a motion for summary judgment on CHR's counterclaim (Doc. 112).

## BACKGROUND

REI filed its third amended complaint on October 12, 2005 (*see* Doc. 35). Three claims against CHR remain: breach of contract (Count I), unjust enrichment (Count II), and conversion (Count III).[1] This Court has federal subject matter jurisdiction under 28 U.S.C. § 1332(c). REI is an Illinois corporation with its principal place of business in Illinois, and CHR is a Minnesota corporation with its principal place of business in Minnesota. The amount in controversy easily exceeds $75,000, exclusive of interest and costs, as REI claims that CHR wrongfully withheld more than $88,876.61 in payments due for transportation services.

The dispute in this case involves the handling of a shipment of portable DVD players. CHR, a self-described "travel agent for freight," arranged for the shipment of these players for its client, Circuit City. CHR does not operate vehicles on its own; instead, it acts as an intermediary by booking freight for its customers with carriers who provide transportation. Circuit City wanted the freight shipped from its facility in Walnut, California, to its store in Marion, Illinois.

The shipment was loaded by Circuit City into container #EMHU231036 and sealed with a steel cable security seal #071856. The seal number and the container number were recorded on the bill of lading. Patriot picked up the shipment on October 21, 2003, and transported it to the Union Pacific Railroad ("UP") in Los Angeles, California. When Patriot picked up the load from Circuit City, the driver signed the bill of lading; when Patriot delivered the shipment to UP, the driver

---

[1] Count IV, a claim for tortious interference with a business relationship, was directed against Circuit City Stores, Inc. ("Circuit City"). This defendant was dismissed without prejudice by Order dated September 21, 2006 (*see* Doc. 102). The Court also notes that Third-Party Defendant Patriot Logistics, Inc. ("Patriot") was dismissed without prejudice by CHR in an order filed on July 7, 2006 (*see* Doc. 84). Thus, at this point, REI and CHR are the only parties to the litigation.

obtained a receipt from UP showing container #EMHU231036 with seal #071856 intact. As the shipment was traveling across the country on a UP train, it made a stop in El Paso, Texas. A visual inspection of container #EMHU231036 revealed that the seal was missing. The container was opened by a UP Police Officer and resealed with seal #UPPDEP119409.

The shipment made its way to Dupo, Illinois, where it was picked up by REI's driver on October 30, 2003. REI's driver obtained a receipt showing that the container was sealed with seal #071856 (the original seal number, not the one placed on the container by UP). REI transported the container to Marion, Illinois, where its driver noted the seal number as #119409 (the one placed on it by UP) at the time of delivery. When Circuit City opened the container on November 1, it discovered that 295 portable DVD players were missing. The amount of the loss totaled $85,429.98.

Circuit City presented this claim to CHR, and CHR paid its customer the full amount, receiving an assignment of Circuit City's rights. In turn, CHR withheld payment to REI pursuant to the parties' contract which contains the following provision:

> Compensation paid to Carrier under this Contract may be withheld in whole or in part by Robinson or any of its subsidiaries or related companies to satisfy claims or shortages arising out of this or other Contracts, or to satisfy advances made to, or on behalf of, Carrier, or to satisfy any debt owed by Carrier to Robinson or any of its subsidiaries or related companies. This offset may occur, at Robinson's discretion, only if the claim or debt has not been acknowledged in writing by Carrier within thirty (30) days of presentation or the claim has not either been paid or denied for a valid cause or reason within ninety (90) days of presentation.

(*See* Doc. 6, Ex. 1, p. 3.)[2]

---

[2]The amount that CHR refused to pay (or withheld) from REI was $81,232.64. This amount, $4,197.34 less than the initial claim of $85,429.98, reflected a credit that CHR received from Circuit City when 14 portable DVD players were recovered by the San Bernadino, California, Police Department. At the time CHR refused to pay REI, it believed that the

REI then filed this lawsuit, and CHR filed a counterclaim against REI pursuant to the Carmack Amendment, 49 U.S.C. § 14706, for the value of the lost goods.

## DISCUSSION

Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The pleadings for purposes of a Rule 12(c) motion include the complaint, the answer, and any written instruments attached to the pleadings as exhibits. *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). The main difference between a Rule 12(c) motion and a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure is that the latter may be filed before an answer to a complaint is filed, whereas a Rule 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial." *Id.* at 452 n.3, *quoting* FED. R. CIV. P. 12(c). Otherwise, however, a Rule 12(c) motion is evaluated "under the same standard as a motion to dismiss under [Rule 12(b)(6)]." *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). Thus, a court, in ruling on a motion for judgment on the pleadings, must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Likewise, the court must "view the facts in the complaint in the light most favorable to the nonmoving party." *GATX Leasing Corp.*, 64 F.3d at 1114. A court may "grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff

---

recovered DVD players were part of the shipment at issue in this case. It later learned that those DVD players were part of another shipment that is not at issue in this action. Thus, the total amount claimed by CHR is the value of the initial claim paid to Circuit City, $85,429.98.

cannot prove any facts that would support his claim for relief.'" *Northern Ind. Gun & Outdoor Shows*, 163 F.3d at 452, *quoting Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993).  If matters outside the pleadings are presented to the Court and not excluded, the Court must treat the motion as a motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56.

It is unnecessary to go beyond the pleadings when analyzing the claims for unjust enrichment and conversion in the third amended complaint.  A claim of unjust enrichment is unavailable when it rests on the breach of an express contract.  *See Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006), *citing Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005) (the doctrine of unjust enrichment has no application where a specific contract governs the relationship of the parties).

Similarly, a claim for conversion fails under these facts.  REI claims that CHR has not paid it for services rendered.  As a general rule, a claim for conversion is unavailable for a general debt or obligation.  *See In re: Thebus*, 483 N.E.2d 1258, 1260-61 (Ill. 1985) ("[T]he subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived. Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it is not necessary for purposes of identification that money should be specifically earmarked. However, an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money.").

REI's claim for conversion is nothing more than a claim that CHR has not paid REI for work it performed under the contract.  The argument that CHR somehow maintained a separate, distinct, and/or identifiable account for REI is nonsense, and the cases REI cites are factually distinguishable.

*See Bill Marek's the Competitive Edge, Inc. v. Mickelson Group, Inc.*, 806 N.E.2d 280, 286 (Ill. App. Ct. 2004); *Roderick Development Investment Co. v. Community Bank of Edgewater*, 668 N.E.2d 1129, 1134-35 (Ill. App. Ct. 1996). In *Bill Marek's*, for example, the Court found that sales commissions were an identifiable chattel to support a conversion claim. The sales commissions were specifically identifiable because they were funds transferred to the defendant from an outside third party. The Court noted, while distinguishing the case from *Thebus*, that the amount the defendant allegedly converted was not a portion of its own assets, but was instead specific funds transferred to it from an outside source. That is not the situation at hand. The claim for conversion fails on its face.[3]

The Court now turns to the breach of contract claim in Count I of the third amended complaint and Count I of the amended counterclaim.

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126,

---

[3]The Court notes that the claims for unjust enrichment and conversion would also fail as a matter of law in light of the Court's ruling, discussed below, that CHR is entitled to the disputed amount pursuant to the provisions of the Carmack Amendment.

1138 (7th Cir. 1994). In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

The Carmack Amendment to the Interstate Commerce Act provides as follows:

> (1) **Motor carriers and freight forwarders**.--A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C.A. § 14706(a)(1). Under this provision, both the carrier who issues the bill of lading and the delivering carrier are both liable for loss occurring during transit, regardless of whether the loss occurred while the cargo was in its possession. *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 634 (7th Cir. 2001). The Carmack Amendment "is intended to 'relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.'" *Pizzo*, 258 F.3d at 634, *quoting Reider v. Thompson*, 339 U.S. 113, 119 (1950); *PNH Corp. v. Hullquist Corp.*, 843 F.2d 586, 588-89 (1st Cir. 1988).

Like many federal statutes, the Carmack Amendment preempts many state law claims.

"State law claims for losses or damage to the cargo . . . whether described under a contract theory or a tort theory, are preempted by the Carmack Amendment." *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997). *See also Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1414-15 (7th Cir. 1987) (tracing the history of the Carmack Amendment and its interpretation and holding that the Carmack Amendment bars a shipper from seeking any other remedy provided by either state statutory or common law against a carrier for damages to goods that have been transferred in interstate commerce).

The Carmack Amendment does not, however, preempt all state law claims. In *North American Van Lines, Inc. v. Pinkerton Security Systems, Inc.*, 89 F.3d 452, 458 (7th Cir. 1996), the Seventh Circuit held that claims involving "a separate and independently actionable harm to the shipper as distinct from the loss of, or damage to, the goods" are not preempted. For example, "a carrier might be liable to a shipper under a statute prohibiting deceptive trade practices, or a bailor might be able to recover from a bailee in tort if the claim for relief does not depend on the existence of a contract." *Gordon*, 130 F.3d at 289.

There is not a separate and independently actionable harm in this case. The case is about loss of goods, the 295 portable DVD players that disappeared from the shipment somewhere between California and Illinois. As Judge Easterbrook explained once, "motor carriers can't just cancel the Carmack Amendment by their say-so. Doubtless everyone would like to override federal statutes on occasion, but matters are not that simple." *Tempel Steel Corp. v. Landstar Inway, Inc.*, 211 F.3d 1029, 1031 (7th Cir. 2000).

The Carmack Amendment preempts REI's breach of contract claim, and so the question becomes whether REI is liable to CHR under the counterclaim. A shipper establishes a *prima facie*

case under the Carmack Amendment when it shows: (1) delivery of its goods to the carrier in good condition; (2) arrival in damaged condition; and (3) specific damages. *Allied Tube & Conduit Corp. v. Southern Pacific Trans. Co.*, 211 F.3d 367, 370 (7th Cir. 2000). Once this is shown, "the burden shifts to the carrier to show both that it was free from negligence and that damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Id.* at 369. The excepted causes include "acts of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods." *Id.* at 370 n.2, *citing Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964).

The undisputed evidence before the court establishes the *prima facie* case. The goods were loaded by Circuit City on October 21, 2003, and picked up by Patriot (the receiving carrier) on the same day. On October 30, 2003, REI delivered the goods to Circuit City with a different seal and seal number than the original. Portions of the shipment were missing amounting to a loss of $85,429.98. There is no evidence before the Court that any excepted cause would relieve REI of liability. REI has failed to rebut CHR's *prima facie* case.

Finally, the Court rejects REI's argument that CHR cannot pursue this claim on Circuit City's behalf because it is a "broker" and not the "shipper" of the goods. A "shipper" is defined as:

> 1. One who ships goods to another. 2. One who contracts with a carrier for transportation of cargo. As a legal term of art, the shipper may not be the person who owns the cargo, but an agent or an independent contractor.

BLACK'S LAW DICTIONARY 1411 (8th ed. 2004). Under this definition, CHR is a shipper.

Moreover, the plain language of the Carmack Amendment imposes liability on carriers when a claim is brought by "the person entitled to recover under the receipt or bill of lading." 49 U.S.C.A. § 14706(a)(1). This language has been interpreted broadly and not limited to shippers. *See*

*Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 118 (2nd Cir. 1999) ("Suits under the Carmack Amendment may be brought against a carrier by any person entitled to recover in the carrier's 'bill of lading,' including the buyer who was to receive the good[s]"). REI owed a duty to CHR to transport the goods. CHR arranged for the shipment on Circuit City's behalf, and it was responsible to Circuit City for the loss of goods under its contract with Circuit City.

The case relied upon by REI is neither controlling nor on point. *See Intransit, Inc. v. Excel North Am. Road Transport, Inc.*, 426 F.Supp.2d 1136 (D. Or. 2006). In that case, a district court in Oregon found that the Carmack Amendment did not preempt a broker's claim against a carrier. But unlike the instant case, the broker's claim was "for direct contractual indemnity and not from an assignment of rights by the shipper." *Id.* at 1141. The Court specifically noted, "[t]his action is sufficiently removed from a shipper or some other party who has rights under the bill of lading to sue a carrier for damage to goods shipped." *Id.*

In light of the foregoing, the Court finds it unnecessary to discuss whether the assignment in this case was valid, although the Court does not doubt that a valid assignment is legally possible.

## CONCLUSION

Accordingly, the motion for summary judgment (Doc. 109) and the motion for judgment on the pleadings (Doc. 96) filed by C.H. Robinson Worldwide, Inc., are **GRANTED**, and the motions for summary judgment (Docs. 110, 112) filed by R.E.I. Transport, Inc., are **DENIED**.

The Clerk is **DIRECTED** to enter judgment in favor of C.H. Robinson Worldwide, Inc., and against R.E.I. Transport, Inc., on Count I of the amended counterclaim in the amount of **$4,197.34**, plus prejudgment interest. This amount represents the total amount due, $85,429.98, less the $81,232.64, withheld by CHR pursuant to the contract. All claims against C.H. Robinson

Worldwide, Inc., in the third amended complaint are **DISMISSED on the merits**. C.H. Robinson Worldwide, Inc., is awarded its costs.

Finally, the claims that were previously dismissed without prejudice are hereby **DISMISSED with prejudice**, as no party has sought leave to reinstate the claims, and this litigation is now over in the district court. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  3/16/07

                                              s/ G. Patrick Murphy
                                              G. PATRICK MURPHY
                                              Chief United States District Judge